1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10         **WESTERN DIVISION**
11

12   STEPHANIE A. MARTIN,                    )     No. CV 05-2549-PLA
                                             )
13                    Plaintiff,             )
                                             )     **MEMORANDUM OPINION AND ORDER**
14         v.                                )
                                             )
15   JO ANNE B. BARNHART,                    )
     COMMISSIONER OF SOCIAL                  )
16   SECURITY ADMINISTRATION,                )
                                             )
17                    Defendant.             )
                                             )
18   _____)

19                                **I.**

20                          **PROCEEDINGS**

21         Plaintiff filed this action on April 6, 2005, seeking review of the Commissioner's denial of

22   her application for Disability Insurance Benefits.  The parties filed a Consent to proceed before

23   the undersigned Magistrate Judge on May 9, 2005.  Pursuant to the Court's Order, the parties

24   filed a Joint Stipulation on January 18, 2006, that addresses their positions concerning the

25   disputed issues in the case.  The Court has taken the Joint Stipulation under submission without

26   oral argument.

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on September 3, 1953. [Administrative Record ("AR") at 125.] She has a high school education, and her previous work experience includes positions as a classified ad representative, data entry worker, and administrative account clerk. [AR at 139, 144, 151-58.]

On August 21, 2002, plaintiff filed an application for Disability Insurance Benefits, alleging disability due to pain in her legs, hip and arms, and numbness. [AR at 125-27, 137-46.] She claimed she had been unable to work since September 28, 2001. [AR at 125.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on August 19, 2003, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 24-91.] On November 17, 2003, the ALJ found that plaintiff suffers from the severe impairments of: "status post right below the knee amputation in 1965, degenerative disc disease of the lumbar spine, pain in the bilateral lower extremities, hypertension, and developmental dysplasia of the right hip, status post multiple surgeries." [AR at 18-23.] The ALJ further found that plaintiff has the residual functional capacity[1] to perform sedentary work[2] with certain limitations,[3] and can perform her past relevant work. [AR at 21-22.] For this reason, the ALJ

---

[1]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) and 416.967(a).

[3]   Specifically, the ALJ found that plaintiff cannot perform work "involving lifting and carrying occasionally greater than 10 pounds, 10 pounds or more frequently, standing and/or walking greater than 2 hours in an 8-hour work day, sitting greater than 6 hours in an 8-hour work day, any climbing of ladders, ropes, or scaffolds, more than occasional climbing of ramps or stairs, stooping, kneeling, crouching, and crawling, walking on grossly uneven surfaces, and work involving concentrated exposure to hazards." [AR at 22.]

concluded that plaintiff is not under a disability, and is not eligible for benefits. [AR at 22-23.] When the Appeals Council denied review on February 9, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 5-9.]

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/

/

**A.      THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u> If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u> If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a <u>prima</u> <u>facie</u> case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since March or May, 2002. [AR at 22.] At step two, the ALJ concluded that plaintiff's impairments are severe.   [<u>Id.</u>]   The ALJ found, however, that the impairments do not meet or equal any

impairments in the Listing (step three).  [AR at 20, 22.]  At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as a receptionist, classified ad clerk and data entry clerk, and is not disabled.  Thus, the ALJ did not reach step five of the sequential analysis. [AR at 22-23.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to consider the side effects of her medications in determining her RFC, and failed to consider the impact of her obesity on her RFC. Joint Stipulation ("Joint Stip.") at 8.  For the reasons discussed below, the Court agrees in part with plaintiff, and reverses the ALJ's decision and remands the case for further proceedings.

## A.    THE EVIDENCE

As relevant to the issues raised in the Joint Stipulation, plaintiff testified that she is unable to finish tasks at home because her back and legs start hurting. [AR at 67.] In addition, she always has pain in her hip. [AR at 68.] When she sits, her legs swell and her back and hip start hurting. As a result of her obesity, standing puts a lot of pressure on plaintiff's legs. [AR at 69.] Plaintiff testified that she weighed 185 pounds at the time of the hearing. [AR at 74.] She stated that she takes Vicodin three times a day every day for the pain, as well as Tramadol and Tylenol 3 with codeine.[4]  [AR at 69-70.] Plaintiff indicated that the medications make her "so dizzy" that she feels like she is drunk, and cause her to be "like in a drunken stupor."  Because of that, she does not drive a car. [AR at 48, 71.] The medications also make her drowsy. [AR at 71-72.]  In February, 2003, plaintiff complained of dizziness that had lasted for about 2 weeks. [AR at 263.]  Plaintiff testified that she is able to cook, make her bed, do house cleaning chores, and vacuum, but she does not take out the trash, dust, sweep or mop. [AR at 54-55.] She can fold laundry and assist

---

[4]    Plaintiff's treatment records show that she takes Tylenol 3, Tramadol and Vicodin to deal with her pain. [See, e.g., AR at 204, 206, 252-53, 271, 274.]

with the grocery shopping. [AR at 55-56.] During a typical day, plaintiff sits at home, watches television and does some household chores. [AR at 58.]

Plaintiff, who in June, 2002, was 5 feet, 1 inch tall and weighed 190 pounds, was described as presenting with "moderate obesity." [AR at 188.] In September, 2002, she weighed 197 pounds. [AR at 204.] In December, 2002, plaintiff was described as having "morbid obesity," and weighed 191 pounds. [AR at 274.] In February, 2003, plaintiff was described as "grossly obese," at 184 pounds. [AR at 230.] In June, 2003, she weighed 188 pounds, and was again described as obese. [AR at 252.]

During a consultative examination performed in November, 2002, plaintiff indicated that her pain was sharp, throbbing and burning, and that it becomes worse with prolonged sitting, standing, walking, bending and lifting.  She was described by the examiner as obese, weighing 195 pounds.  The physician observed "marked atrophy" of her remaining right leg, and concluded that she can lift and carry 20 pounds occasionally and 10 pounds frequently, can stand and walk 2 to 4 hours out of an 8 hour day with a prosthesis, and could sit without impairment. [AR at 209-13.]

**B.    SIDE EFFECTS OF MEDICATION**

Plaintiff contends that the ALJ erred by not making any findings concerning the side effects of her medications.  Defendant responds that plaintiff offered no objective evidence that her medications make her dizzy or cause drowsiness, and that the only evidence of this type of symptom is one statement she made to a doctor in February, 2003, that she had been experiencing dizziness that had lasted approximately 2 weeks. [AR at 263.] Plaintiff in the Joint Stipulation points to no evidence in the record other than her testimony documenting any side effects from her medications.  Thus, her claim of disabling side effects depends on the credibility of her testimony.  Here, the ALJ rejected her statements.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990)

1   (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the

2   ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity

3   of symptoms when there is medical evidence of an underlying impairment).  Indicia of unreliability

4   upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities

5   inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements;

6   (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  See Fair v. Bowen,

7   885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform

8   household chores and other activities that involve many of the same physical tasks as a particular

9   type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not

10  prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839

11  F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v.

12  Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for

13  back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled).  If

14  properly supported, the ALJ's credibility determinations are entitled to "great deference."  Green

15  v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

16          The ALJ rejected plaintiff's credibility "to the extent she alleged she could perform no work

17  activities." [AR at 21.] He found plaintiff's daily activities inconsistent with disability, "and . . .

18  consistent with ability to perform at least sedentary work activities."  He further indicated that

19  although plaintiff reported attending physical therapy following a motor vehicle accident, there was

20  an absence of physical therapy progress notes or other medical records documenting injuries from

21  the accident.  He also noted inconsistent statements concerning when she last worked.  As these

22  conclusions are supported by the record, the Court finds that the ALJ rejected plaintiff's testimony

23  using "ordinary techniques of credibility evaluation," and by giving explicit, clear and convincing

24  reasons for finding that her testimony was not credible.  This determination is entitled to great

25  deference.

26          Aside from plaintiff's own testimony, which was properly rejected, the only evidence that

27  she experiences dizziness and drowsiness from her medication is the single statement to a

28  physician in February, 2003, when she complained of dizziness that started about two weeks

earlier.  [AR at 263.] Aside from the fact that this statement is only an assertion by plaintiff, and not a clinical finding, plaintiff had been taking the suspect medications long before that two week period, and had not previously reported dizziness to any physician.  See, e.g., AR at 204 (taking Tramadol in September, 2002); AR at 271 (taking Vicodin in December, 2002); AR at 274 (taking Tylenol 3 in December, 2002).  What is more, plaintiff presented no clinical evidence at all that such side effects, even if true, were severe enough to interfere with her ability to work.  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985) (claimant failed to meet burden of proving that an impairment is disabling where he produced no clinical evidence showing that his prescription narcotic use impaired his ability to work.).  As the only evidence of side effects was plaintiff's testimony, and the ALJ properly found her not credible, remand is not warranted on this issue. See Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (ALJ properly rejected the side effects of the plaintiff's medications where the plaintiff offered no objective evidence of those side effects, but only her own statements to her doctor and her testimony at the hearing, and where the ALJ properly found that she lacked credibility).

## C.    THE ALJ ERRED IN FAILING TO PROPERLY EVALUATE PLAINTIFF'S OBESITY

Plaintiff asserts that the ALJ erred by failing to evaluate the effects of plaintiff's obesity on her ability to work and on her other impairments. (Joint Stip. at 11).  Specifically, plaintiff contends that the ALJ "failed to consider [evidence of obesity] -- or even mention it -- in determining her residual functional capacity."  (Id.)

At the hearing before the ALJ, plaintiff testified that standing puts a lot of pressure on her legs because of her obesity.  In addition to this testimony, there are numerous references in the medical records regarding plaintiff's weight, which show that plaintiff is approximately five feet, one inch tall, and has weighed from 184 to 197 pounds. Several medical records include notations that plaintiff is "obese," "grossly obese," or has "morbid obesity."  Despite these medical records and statements, however, and the ALJ's acknowledgment that she was diagnosed with obesity and "exogenous obesity" [AR at 19-26, 231, 276], the ALJ did not evaluate the impact of her obesity on her ability to work at any point in his decision denying plaintiff benefits.

8

1     The Social Security Administration ("SSA") delisted obesity from the Listing of Impairments

2  in October 1999, but added language to the regulation that instructed ALJs of the continued role

3  of obesity in disability evaluations.  See Social Security Ruling ("SSR") 02-01p,[5] 2000 WL 628049

4  at *1.  The SSA issued SSR 02-01p, 2000 WL 628049, which recognizes "that the combined

5  effects of obesity with other impairments can be greater than the effects of each of the

6  impairments considered separately" and that adjudicators must consider obesity under all steps

7  of the disability analysis, "including when assessing an individual's residual functional capacity."

8  SSR 02-01p, 2000 WL 628049 at *1.

9     Because there is no listing for obesity, "an individual with obesity 'meets' the requirements

10  of a listing if he or she has another impairment that, by itself, meets the requirements of a listing."

11  SSR 02-01p, 2000 WL 628049 at *5.  Equivalence is also found "if an individual has multiple

12  impairments, including obesity, no one of which meets or equals the requirements of a listing, but

13  the combination of impairments is equivalent in severity to a listed impairment."  Id.  For example,

14  obesity may increase the severity of coexisting or related musculoskeletal impairments to the

15  extent that the combination of impairments meets the requirements of a listing.  Id.  In addition,

16  obese persons may have limitations in exertional, posturing, and manipulative functions.  SSR 02-

17  01p, 2000 WL 628049 at *6.

18     Here, as stated above, the ALJ did not consider the combination or impact of plaintiff's

19  obesity at various stages of the disability determination process.  See Stack v. Barnhart, 327

20  F.Supp.2d 1175, 1179 (C.D. Cal. 2004) ("The ALJ had a duty to assess the impact of Plaintiff's

21  undisputed obesity on the various steps of the sequential evaluation process.").  For example,

22  although none of plaintiff's impairments may, on their own, meet or equal any listing, the ALJ was

23  still required to evaluate whether the cumulative effect of her impairments, including obesity,

24

_____

25     [5]   "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's

26  implementing regulations and the agency's policies.  SSRs are binding on all components of the
    SSA.  SSRs do not have the force of law.  However, because they represent the Commissioner's

27  interpretation of the agency's regulations, we give them some deference.  We will not defer to
    SSRs if they are inconsistent with the statute or regulations."  Holohan v. Massanari, 246 F.3d

28  1195, 1202 n. 1 (9th Cir. 2001) (internal citations omitted).

impacts the disability determination at step three. SSR 02-01p, 2000 WL 628049 at *5 ("We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."). The Commissioner must compare the corresponding medical criteria of a listed impairment with the "symptoms, signs, and laboratory findings" of the claimant's impairments as shown in the recorded medical evidence. 20 C.F.R. §§ 404.1526(a)-(b), 416.926(a)-(b); see also Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ must consider the combination of impairments at step three). There is no indication that any such determination was made at step three in the present case.

Further, the ALJ did not consider plaintiff's obesity in making his RFC determination at step four. "To determine whether a claimant has the residual capacity to perform his past relevant work, the [Commissioner] must ascertain the demands of the claimant's former work and then compare the demands with his present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986) (citing 20 C.F.R. § 404.1520(e)). Although plaintiff has the burden of proof at step four of the sequential evaluation process, the ALJ still has a duty to make the requisite factual finding to support his conclusion as to whether plaintiff can perform her past relevant work. See SSR 82-62; see also 20 C.F.R. §§ 404.1571, 416.971, 404.1574, 416.974, 404.1565 & 416.965. At step four, the ALJ is required to assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-01p, 2000 WL 628049 at *6. As the SSA noted in SSR 02-01p:

> Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p, our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.
> The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

1   Id. (internal citations and footnote omitted); see also Burch v. Barnhart, 400 F.3d 676, 683 (9th

2   Cir. 2005) ("As with other impairments, the ALJ should explain how he determined whether

3   obesity caused any physical or mental impairments.").

4            Here, the ALJ did not consider the effect of plaintiff's weight on her ability to sustain work

5   activity.  Nor did the ALJ consider the effect of plaintiff's undisputed obesity on her impairments

6   to determine whether it affected her ability to perform routine and physical activities on a

7   sustained basis.  See Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) ("The ALJ was

8   responsible for determining the effect of [plaintiff's] obesity upon her other impairments, and its

9   effect on her ability to work and general health, given the presence of those impairments.

10  Defendant admits that the ALJ did not do so, even implicitly. On remand, that determination must

11  be made."). The Court in Celaya noted that the ALJ's duty to develop the record requires an

12  assessment of a claimant's obesity even though not expressly raised by the claimant herself.

13  Celaya, 332 F.3d at 183.   The duty to develop the record applies even when a claimant is

14  represented by counsel.  Id.  In the present case, evidence of plaintiff's obesity is readily apparent

15  in the record, and the ALJ in fact specifically inquired about her weight at the hearing.   An

16  assessment of her obesity was required.  Accordingly, remand is warranted.

17  /

18  /

19  /

20  /

21  /

22  /

23  /

24  /

25  /

26  /

27  /

28  /

# VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is warranted to remedy the ALJ's failure to consider plaintiff's obesity on her residual functional capacity.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 16, 2006

_____/S/_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE